UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:01-cr-00041-JAW |
| | ) | |
| JEFFREY PAUL BARNARD | ) | |

**ORDER ON MOTION TO ALLOW USE OF MEDICINAL MARIJUANA**

Jeffrey Paul Barnard holds a registry card issued by the state of Maine entitling him under state law to use marijuana for medicinal purposes. Mr. Barnard is also a federal supervisee, who under the terms of his federal supervised release may not unlawfully possess or use a controlled substance. Mr. Barnard moves this Court to allow him to use marijuana for medicinal purposes while on supervised release. The Court denies the motion.

**I. STATEMENT OF FACTS**

On November 13, 2003, a jury convicted Jeffrey Paul Barnard of one count of possession of a firearm by a felon. *Jury Verdict* (Docket # 67). On July 7, 2004, the Court sentenced Mr. Barnard to 103 months in prison followed by three years of supervised release. *J. as to Jeffrey Paul Barnard* (Docket # 107) (*J.*). Mr. Barnard was released from prison and began his period of supervised release on August 7, 2007. *Pet. for Warrant or Summons for Offender Under Supervision* at 1 (Docket # 119) (*Pet. for Warrant*).

As a condition of his supervised release, Mr. Barnard was subject to the mandatory condition that he "not commit another Federal, State or local crime

during the term of supervision and that the [he] not unlawfully possess a controlled substance. . . . [and] that [he] refrain from any unlawful use of a controlled substance" 18 U.S.C. § 3583(d). He was also subject to Standard Condition 7, which provides that he must:

> refrain from excessive use of alcohol and not purchase, possess, use, distribute or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

*Pet. for Warrant* at 1.

On December 22, 2009, Mr. Barnard's probation officer reported that Mr. Barnard tested positive for marijuana on twenty-three occasions between June 4 and December 22, 2009. *Pet. for Warrant* at 2. Mr. Barnard explained to his probation officer that he used marijuana to address pain from multiple medical problems. *Id.* Mr. Barnard had been prescribed oxycodone for pain management, but during the period in which he tested positive for marijuana, he tested positive for oxycodone only twice. *Id.* Despite being advised by his probation officer that he should address pain issues with his doctor and that continued use of marijuana would not be permissible, Mr. Barnard continued to use marijuana to address his pain, but he admitted that he used marijuana at least a couple of times for gratuitous reasons. *Id.*

On September 30, 2010, Mr. Barnard obtained a registry card authorizing him to participate in the Maine Medical Use of Marijuana Program (Medical Use Program). *Def.'s Mot. to Allow use of Medicinal Marijuana* (Docket # 190) (*Def.'s*

*Mot.*) at Ex. 1 (*Registry Card*). On November 16, 2010, he moved to be allowed to use medicinal marijuana. *Def.'s Mot.* at 1. On December 12, 2010, the Government objected. *Gov't.'s Objection to Def.'s Mot to Allow Medicinal Marijuana* (Docket # 198) (*Govt.'s Objection*).

## II. DISCUSSION

In 2010, in a legislative act retroactive to December 23, 2009, the state of Maine legalized the possession and use of physician-prescribed marijuana for medicinal purposes. *See* Maine Medical Use of Marijuana Act, 22 M.R.S. § 2421 *et seq.*; 2010 Me. Legis Serv. Ch.631 § 51 (stating that Maine Medicinal Use of Marijuana Act "applies retroactively to December 23, 2009"). Shortly after those provisions came into effect, this District issued an opinion in *United States v. Friel*, 699 F. Supp. 2d 328 (D. Me. 2010), which addressed whether an individual who is prohibited from possessing or using marijuana under the terms of his federal supervised release may nevertheless use marijuana under the terms of Maine law. In denying Mr. Barnard's motion, the Court largely adopts the reasoning in *Friel*.

The terms of Mr. Barnard's supervised release bear upon his request. First, aggregating the terms regarding controlled substances, Mr. Barnard's release is subject to the condition that he not use, possess, purchase, distribute, or administer a controlled substance. 18 U.S.C. § 3583(d); *Pet. for Warrant* at 1. Marijuana is a controlled substance under both Maine and federal law. 17-A M.R.S. § 1102(4); 21 U.S.C. § 812(c)(10). Presumably, Mr. Barnard would direct the Court to focus on

the clause, "except as prescribed by a physician," in Standard Condition 7.[1] At the time the Court imposed Mr. Barnard's terms of supervised release, neither federal nor Maine law permitted physicians to prescribe marijuana. Given its illegality at the time, the Court did not contemplate the prescriptive use of marijuana under Standard Condition 7. The recent change in Maine law does not affect the intended terms of Mr. Barnard's supervised release

Ignoring for a moment the potential conflict between Maine and federal law, the Court finds that even if it is legal under state law, Mr. Barnard is not an appropriate candidate for using marijuana while under supervision. *See Friel*, 699 F. Supp. 2d at 330. First, there is the history of this case. Mr. Barnard has demonstrated a determination to flout substance abuse laws during the period of his supervised release. He tested positive for marijuana twenty-three times before the Medical Use Program even came into effect. *Pet. for Warrant* at 2; 2010 Me. Legis Serv. Ch.631 § 51. He continued his use of marijuana despite stern admonitions from both his probation officer and the Court that further use would not be tolerated. *Id.* He also misrepresented his marijuana use to his probation officer, and continued his use after stating that he had and would cease. *Id.* In

---

[1] The Court uses the term, "presumably", because Mr. Barnard's entire motion is as follows:

> NOW COMES Jeffrey Paul Barnard by and through his attorneys, Vafiades, Brountas & Kominsky, LLP, and hereby prays this Court issue such Order as to allow him to use medical marijuana. Defendant would represent to the Court that he has received proper clearance to use said medicinal marijuana.

*Def.'s Mot.* at 1. In addition, Mr. Barnard attached a letter from the Maine State Department of Health and Human Services and his Maine Medical Marijuana registry card. *Registry Card.*.

addition to using marijuana to address pain issues, Mr. Barnard admitted to using marijuana for "gratuitous reasons." *Id.*

Second, if there is a case where the Court would allow the use of medical marijuana, Mr. Barnard has woefully failed to demonstrate that his should be it. Mr. Barnard's motion attaches a September 30, 2010 letter from John Theile of the Maine Department of Health and Human Services, enclosing Mr. Barnard's registry card and informing him that he is authorized to participate in the Maine Medical Use of Marijuana Program. *Registry Card*. Mr. Theile informs Mr. Barnard that he is authorized as a "patient with growing rights." Mr. Barnard has provided a copy of his registration card.

But there is no further information. Although the Maine Medical Use of Marijuana Act requires that a registrant provide a written certification from a physician justifying the patient's use, Mr. Barnard has not supplied a copy of that certification. Mr. Barnard has not given the Court any of the most basic information about his medical need for marijuana: 1) the name of the physician who prescribed the marijuana; 2) the diagnosis that justifies the prescription; 3) the medical records that detail his medical history and support the diagnosis and prescription; 4) the doses of marijuana he has been prescribed; 5) length of time the prescription is effective; and, 6) the efficacy of his use of marijuana as a medicine. The Court has no way of knowing whether the physician who wrote the medical marijuana prescription acquiesced to Mr. Barnard's importuning, or whether the prescription represents his considered medical judgment.

5

This is not to say that the Court would be bound by even a physician's considered approval of medicinal marijuana for a federal supervisee. The physician's focus is narrow: the best health interest of the patient. The Court's range of considerations is broader. Section 3562(a) requires the Court to consider the § 3553(a) factors in determining the conditions of probation. 18 U.S.C. § 3562(a); § 3553(a). Thus, like the physician, the Court should consider the need to provide the defendant with medical care, but it must also take into account such factors as the need to promote respect for law, to punish the offense, to deter criminal conduct, and to protect the public from further crimes of the defendant. § 3552(a). The burden remains on the supervisee to convince the Court that his use of marijuana for medicinal purposes is justified when balanced against the other factors.

The Maine Medical Use of Marijuana Act is not open-ended legislation, making marijuana available for every person who wishes to smoke. It is limited to enumerated debilitating medical conditions, 22 M.R.S.A. § 2422(2), and there are significant restrictions even for a registrant's possession and use of marijuana. §§ 2422, 2423-A; 10-144 ME. CODE. R.. ch.122 § 1-11 (2010). Although it could surmise that the physician prescribed marijuana to Mr. Barnard to control pain, there is no confirmation in the record and no indication that he is complying with Maine's statutory restrictions.

Further, the Court has no information about whether Mr. Barnard has made an effort to address his pain by lawful means. Mr. Barnard's probation officer

repeatedly urged him to see a doctor to address his pain issues. *Id.* Before physicians could prescribe marijuana in Maine, Mr. Barnard was legally prescribed oxycodone to control his pain. *Id.* However, comparing his two positive tests for oxycodone to his twenty-three positive tests for marijuana, it appears that Mr. Barnard chose marijuana in lieu of oxycodone.

Finally, if Mr. Barnard wished to have the supervised release condition eliminated so that he could use marijuana to treat a medical condition, he should have come to the Court, made his case, and sought a change in the conditions of his supervised release before violating its terms. He did not. Instead, fully aware that use of marijuana was federally prohibited, Mr. Barnard went ahead anyway, used marijuana in defiance of the court order, subsequently obtained a state of Maine registration card to justify his ongoing use, and forced the Probation Office to bring his unauthorized use to the Court's attention. In short Mr. Barnard made no effort to conform his conduct to federal law; he demands that federal law conform to his conduct. The facts raise the possibility that Mr. Barnard's attempt to obtain medicinal marijuana is a pretext for furthering a substance abuse problem or at least for providing a legal avenue to a recreational habit. The Court will not so enable Mr. Barnard.

Thus, even assuming that it could legally permit Mr. Barnard to use medicinal marijuana, the Court will not do so. "It is not uncommon for people on supervised release to be restricted from activities that are legal for the rest of the population." *Friel*, 699 F. Supp. 2d at 330. For example, terms of supervised

release often prohibit defendants from using alcohol and possessing firearms, "things that law-abiding citizens are entitled to do." *Id.* Similarly, Mr. Barnard is prohibited from using marijuana, regardless of its limited legality within the state Maine.

It is therefore unnecessary to address "the tension between Maine law and federal law in this case." *Id.* Nevertheless, the Court echoes *Friel* in observing that the unsettled legal landscape demands that the courts exercise caution in determining whether people under federal supervision may be permitted to participate in state medical marijuana regimens. *See* 699 F. Supp. 2d at 330-31. Mr. Barnard's conditions of supervised release provide that he shall "not commit another Federal, State, or local crime." Possession of marijuana remains illegal under federal law, and "federal law does not recognize any medical use for a Schedule I controlled substance like marijuana." *Id.* at 330-330 n.1 (citing 21 U.S.C. §§ 823(f), 841(a)(1), and 844(a)). As Judge Hornby concluded, it "is still illegal to prescribe marijuana under federal law because federal law does not recognize any medical use for a Schedule 1 controlled substance." 699 F. Supp. 2d at 330.

In sum, Mr. Barnard presents a singularly unsupported legal or factual case for his motion to remove a duly authorized condition of his supervised release.

## III. CONCLUSION

The Court DENIES Jeffrey Paul Barnard's Motion to Allow Use of Medicinal Marijuana (Docket # 190).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2011